# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **GREGORY HEATH,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Case No. 3:09-cv-0138** |
| | ) | **Judge Nixon** |
| **METROPOLITAN LIFE INSURANCE** | ) | **Magistrate Judge Brown** |
| **COMPANY,** | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Pending before the Court is Plaintiff Gregory Heath's ("Plaintiff" or "Mr. Heath")
Motion for and Award of Attorney's Fees and Reimbursement of Expenses ("Motion") (Doc.
No. 37), filed with a supportive Memorandum (Doc. No. 38), to which Defendant Metropolitan
Life Insurance Company ("MetLife") filed a Response (Doc. No. 44). Plaintiff then filed a
Reply (Doc. No. 45-1) and Supplemental Citation of Authority (Doc. No. 47) in further support
of his Motion, and Defendant also filed a further Response to the Supplement (Doc. No. 48).

For the reasons stated below, Plaintiff's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff worked as a maintenance supervisor at a Honeywell International, Inc. chemical
plant in Illinois. (Doc. No. 29 at 2.) As an employee, he participated in the company's short-
term and long-term disability Plans administered by MetLife. (*Id.*) Plaintiff applied for long-
term disability ("LTD") benefits on August 10, 2006, claiming that he was disabled, having been
diagnosed with segmental or spinal myoclonus and suffering from related symptoms such as

jerking, pain, fatigue and memory loss. (*Id.* at 3.) MetLife approved Plaintiff's claim for LTD benefits, effective September 22, 2006. (*Id.*)

Subsequently, MetLife continued to receive medical information on Plaintiff's condition from his neurologist, and also enlisted an investigator to perform surveillance on Plaintiff regarding a tip that Plaintiff was working at his family's health food store. (*Id.* at 3-5.) pj By letter dated October 12, 2007, MetLife informed Plaintiff that, based on a review of his claim to determine if he was eligible for LTD benefits pursuant to the Plan, MetLife was withdrawing the claim and no further benefits would be paid past October 11, 2007. (*Id.* at 6.) After an appeal, Defendant again denied Plaintiff's LTD benefits claim and informed Plaintiff that he had exhausted all of his administrative remedies. (*Id.* at 8-9.) On February 11, 2009, Plaintiff brought this action pursuant to section 502(e) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1332(e), *et seq.* (Doc. No. 1.)

On August 31, 2009, Plaintiff and Defendant both filed Motions for Judgment on the Administrative Record. (Doc. Nos. 17 & 19.) Magistrate Judge Brown issued a Report and Recommendation ("Report") on November 23, 2009, recommending that Plaintiff's Motion for Judgment on the Administrative Record should be granted in part and denied in part, that Defendant's Motion for Judgment on the Administrative Record should be denied, and that Plaintiff's claim for LTD benefits should be remanded back to MetLife for further consideration. (Doc. No. 29.) Magistrate Judge Brown found that MetLife's denial of Plaintiff's LTD benefits was arbitrary and capricious, specifically, that MetLife had submitted a paper review and failed to adequately consider Plaintiff's medical record. (*Id.* at 16.) However, Magistrate Judge Brown declined to award benefits because there were factual issues to be resolved regarding Plaintiff's condition. (*Id.*) The parties subsequently filed a Joint Notice of Intent Regarding Report and

Recommendation ("Joint Notice") stating that neither party intended to submit objections to the Report, and that the claim would be remanded to MetLife. (Doc. No. 34.) This Court adopted the Report in its entirety on January 21, 2010. (Doc. No. 35.)

On February 22, 2010, Plaintiff filed the Motion now under consideration (Doc. No. 37) along with a Memorandum in Support (Doc. No. 38), claiming entitlement to $69,750.00 in fees and expenses available under ERISA. Defendant filed its Response on March 19, 2010 (Doc. No. 44). Plaintiff filed a Motion for Leave to File Reply (Doc. No. 45), along with a copy of the Reply (Doc. No. 45-1) on April 7, 2010.

On April 26, 2010, Defendant filed a Response opposing Plaintiff's request for leave to file the Reply, asking in part for the Motion for Attorney's Fees to be held abeyance pending the Supreme Court's decision in *Hardt v. Reliance Standard Life Insurance Co.*, 130 S. Ct. 2149 (2010). (Doc. No. 46.) After the *Hardt* case was decided, Plaintiff filed a Supplemental Citation of Authority on May 26, 2010 (Doc. No. 47), and Defendant responded to this last filing on June 11, 2010 (Doc. No. 48). The Court ultimately granted Plaintiff leave to file his Reply later, on April 1, 2011. (Doc. No. 51.)

## II.   LEGAL STANDARD

In *Hardt*, the Supreme Court held that it is within the discretion of the court to award attorney's fees to either party in an action seeking relief under ERISA, but that this discretion is not unlimited. 130 S. Ct. at 2158. The Supreme Court held that § 1132(g)(1), which provides for the awarding of attorney's fees, contains a threshold requirement:

> [A] fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1). A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)) (internal citations omitted).

In *Hardt*, after the district court noted its inclination to rule for the plaintiff but remanded her case to the insurer for further consideration of her disability claim, the insurer reversed course and determined that the plaintiff was entitled to benefits. *Id.* at 2154. The Court found that this was clearly more than a trivial success or procedural victory, and reserved judgment on whether a remand order, without more, would constitute "some success on the merits" and make a claimant eligible for an award of fees. *Id.* at 2159. Once the district court determines the threshold requirement under § 1132(g)(1) has been met, however, there is discretion as to the decision to award fees. See *id.* at 2158.

Prior to *Hardt*, courts within the Sixth Circuit applied a five-factor test known as the "*King* factors" to determine whether to award fees. *Moore v. Menasha Corp.*, Case No. 1:08-cv-1167, 2011 U.S. Dist. LEXIS 20020, at *5 (W.D. Mich. Mar. 1, 2011). The *King* factors are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). In *Hardt*, the Supreme Court analyzed an identical five-factor test employed by the Fourth Circuit and held that the test "bear[s] no obvious relation to ERISA § 1132(g)(1)'s text" and thus was not required. *Hardt*, 130 S. Ct. at 2158. Although the Supreme Court found that the test was not required, the Court stated that it "do[es] not foreclose the possibility that once a claimant has satisfied [the threshold] requirement, and thus becomes eligible for a fees award under ERISA § 1132(g)(1), a court may consider the five factors." *Id.* at 2158 n.8.

District courts within the Sixth Circuit have generally continued to apply the *King* factors as allowed in *Hardt*. Some have indicated that these factors are no longer mandatory but continue to apply them. *See, e.g., Moore*, 2011 U.S. Dist. LEXIS 20020, at *7 (stating that the *King* factors are no longer mandatory, but applying them because the court found them to be "a useful guide to exercising its discretion" and "both parties brief[ed] [the factors] extensively"). Others have applied the *King* factors without any mention of *Hardt*. *See, e.g., Reese v. CNH Global N.V.*, Case No. 04-70592, 2011 U.S. Dist. LEXIS 70607, at *9-*11 (E.D. Mich. June 30, 2011); *Loan v. Prudential Ins. Co. of Am.*, Civil Action No. 5:08-cv-38-JMH, 2011 U.S. Dist. LEXIS 51205, at *6-*13 (E.D. Ky. May 10, 2011). In addition, at least one district court within this Circuit has decided not to apply the *King* factors after *Hardt*. *Pemberton v. Reliance Standard Life Ins. Co.*, Civil Action No. 08-86-JBC, 2011 U.S. Dist. LEXIS 24939, at *8-*9 (E.D. Ky. Mar. 10, 2011) (declining to apply the *King* factors because they would "add nothing to the analysis of eligibility or reasonableness").

However, a recent unpublished Sixth Circuit opinion, reviewing a district court decision that occurred well before *Hardt*, noted that this Circuit "requires" consideration of the *King* factors. *McKay v. Reliance Standard Life Ins. Co.*, Nos. 10-5154; 10-5155, 2011 U.S. App. LEXIS 13143, at *22 (6th Cir. June 27, 2011). The Circuit Court found that the factors were evaluated properly in favor of the plaintiff, and then, also, that *Hardt*'s requirement of "some degree of success" was met. Although this Court perceives that there may be some limitations to *McKay*—particularly given that the appellate court appears not to have been asked about the continued relevance of *King,* and the factors were clearly controlling at the time of the district court's decision—the opinion suggests that the *King* factors should not be cast aside. In a case following (and citing) *McKay*, a court in the Eastern District of Kentucky addressed *Hardt* first,

and then performed an extensive analysis of the *King* factors. *Bio-Med. Applications of Ky., Inc. v. Coal Exclusive Co., LLC*, Civil No. 08-80-ART, 2011 U.S. Dist. LEXIS 91187, at \*5-\*21 (E.D. Ky. Aug. 15, 2011).

As such, while this Court is of the view that *Hardt* controls its ability to grant an award of fees in this case, *King* has not lost its vitality in this jurisdiction and should also be considered to guide the Court's exercise of discretion in assessing Plaintiff's request.

## III. ANALYSIS

As described above, Plaintiff argues in his Motion and subsequent filings that he succeeded on the merits so as to be eligible for reasonable fees and costs pursuant to the Supreme Court's interpretation of § 1132(g)(1) in *Hardt*, and that the *King* factors tip in favor of an award to Plaintiff, too. (*See* Doc. Nos. 38 & 47.) Plaintiff also rejects Defendant's assertion that he agreed to forego seeking fees and costs. (Doc. No. 45-1.) Although Defendant leads with the latter argument regarding an agreement between the parties, he focuses more heavily on Plaintiff's entitlement to any award under *Hardt* or *King*, and attacks the requested fees as unreasonable and insufficiently documented. (Doc. Nos. 44 & 48.)

The Court will first address the issue of an agreement between the parties, and then will reach the substance of Plaintiff's request for fees and expenses.

### A. *Agreement Between the Parties*

Defendant claims in its Response that Plaintiff's request that this Court award him fees and expenses is in violation of the parties' agreement not to file objections to the Magistrate Judge's Report. (Doc. No 44 at 2-3.) Defendant asserts that, per the agreement, Plaintiff implicitly agreed to forego further action in this Court. (*Id.*) In his Reply, Plaintiff argues primarily that the written agreement, which was contained in their Joint Notice (Doc. No. 34),

was limited on its face to an arrangement not to file objections to the Report, and that no implicit agreement exists beyond this. (Doc. No. 45-1 at 2.)

Indeed, the Joint Notice only states that "[the parties] do not intend to submit any objection to the Magistrate Judge's Report and Recommendation." (Doc. No. 34.) It does not reference any agreement concerning a motion for attorney's fees, nor is it suggestive of such an agreement. Defendant has provided the Court with no other evidence that indicates that the parties in fact intended or understood the Joint Notice to bar Plaintiff from requesting a fee award. Thus, this argument must fail.

### B. *Plaintiff's Eligibility to Receive An Award of Fees*

Next, the Court turns to the threshold requirement of whether Plaintiff has had "some degree of success on the merits" so as to be entitled to a fee award under § 1132(e)(1). *Hardt*, 130 S. Ct. at 2158. Plaintiff argues that under *Hardt*, he has shown some degree of success on the merits, and, particularly, that his situation is similar to that of Ms. Hardt, whose claim was remanded by the district court due to the failure of the insurer to perform an adequate review and ultimately received the desired benefits on remand. (Doc. No. 47 at 2.) Defendant responds that the district court in *Hardt* found compelling evidence that the plaintiff was totally disabled and stated as much prior to remand; here, however, the Report adopted by this Court did not conclude that Plaintiff was disabled and that unresolved factual issues necessitated a remand. (Doc. No. 48 at 2-3.) The point of distinction Defendant seeks to highlight is that "unlike the plaintiff in *Hardt*, it was not at all clear prior to remand, based on the evidence before MetLife up to that point, that Plaintiff was entitled to any benefits." (*Id.* at 3.)

The Court must note at this juncture that Defendant's effort to distinguish this case from *Hardt* is undermined by its assertion in a previous filing that "the Plaintiff here is in the precise

position as the *Hardt* plaintiff," such that *Hardt* would be binding in this case and the Court should disregard arguments in Plaintiff's Reply. (Doc. No. 46 at 2.) While it is obvious why Defendant has changed its position, Defendant's earlier claim that the plaintiff in *Hardt* and Mr. Heath are in the "precise position" as each other cannot be ignored.

While it is true that the Court's orders in this case lack the conclusiveness of the district court's in *Hardt* as to the plaintiff's entitlement to benefits, Plaintiff has still achieved some success on the merits. MetLife's decision was found to be arbitrary and capricious on several grounds, such as the use of a paper review without examination of Plaintiff's condition or credibility in person; the failure to consider evidence of Plaintiff's receipt of disability benefits from the Social Security Administration; the lack of reasoning for conclusions regarding Plaintiff's condition; and MetLife's failure to rely on video surveillance of Plaintiff in resolving to deny him benefits, which led Magistrate Judge Brown to question the strength of this evidence, despite the fact that it was cited as a reason for MetLife's initial termination of benefits. (Doc. No. 29 at 11-14.) The Magistrate Judge was also "troubled" by the way in which MetLife used one doctor's non-response to a letter stating that Plaintiff could perform work as reflecting an affirmative response in agreement with that statement, without even confirming that the doctor had received the letter. (*Id.* at 14-15.) MetLife was instructed to cure its clearly insufficient review on remand, and in doing so quickly reversed its denial of benefits.

Although this Court agrees Mr. Heath's case is not quite as similar to the plaintiff's in *Hardt* as he might like—the Magistrate Judge's findings stopped short of indicating that Plaintiff was entitled to benefits—his action was certainly somewhat successful on the merits in light of the Court's sound and overwhelming rejection of MetLife's decision. MetLife's subsequent reversal of the denial only emphasizes the magnitude and significance of the errors highlighted

by the Magistrate Judge. The Court, thus, does not agree with Defendant's argument that it was "not at all clear, prior to remand . . . that Plaintiff was entitled to benefits." Although MetLife considered further evidence in coming to its final decision that Plaintiff was entitled to benefits, the record before MetLife prior to that supplementation certainly did not support its finding that Plaintiff was not entitled to benefits, and it excluded facts that supported an opposite conclusion. Ultimately, it would be hard to consider Plaintiff's victory here to be "trivial success on the merits" or "purely procedural."

Post-*Hardt* case law from within this Circuit contributes to this Court's conclusion that Plaintiff has achieved some success on the merits so as to be eligible for an award of attorney fees. In its unpublished *McKay* opinion, the Sixth Circuit upheld the determination of a court in the Eastern District of Tennessee that an ERISA plaintiff whose case was remanded for further consideration of his application for benefits—but whose claim ultimately failed on remand—had achieved adequate success to be eligible for attorney fees under *Hardt*. 2011 U.S. App. LEXIS 13143, at *24-25; *see also Bio-Med. Applications of Ky.*, 2011 U.S. Dist. LEXIS 91187, at *6 (following *McKay* to find that *Hardt* was satisfied where district court had vacated and remanded the defendant's decision on the plaintiff's claim for new review applying proper methodology).

In a case still more factually similar to the instant matter, a judge in the Eastern District of Kentucky recently held that a remand that resulted in an award of benefits to the plaintiff, who had "faced a complete denial of benefits at the beginning of the case," constituted some success on the merits. *Pemberton*, 2011 U.S. Dist. LEXIS 24939, at *4. The court emphasized that even though the ultimate benefit award on remand included substantial deductions for an early-retirement offset, *Hardt* does not require a plaintiff to prevail but instead to achieve some success, and the reinstatement of benefits on remand could be "fairly characterize[d]" as such.

*Id.* Although the defendant argued that the court's decision remanding the case was merely procedural and did not alter the parties' positions, the court emphasized that the plaintiff's eligibility for fees was based not simply on the fact of remand, but on the gain realized through the remand. *Id.* at \*4-\*5. Thus the open question of a "remand order, without more" set aside by Justice Thomas in *Hardt* was not before the court. *Id.* at \*5.

Similarly, in the present case, the Magistrate Judge did not grant Plaintiff's request for reinstatement of LTD benefits, but instead remanded the case back to MetLife. This remand resulted in MetLife's decision to reinstate Plaintiff's LTD benefits retroactive to their termination date. (Doc. No. 45 at 1.) Like the result in *Pemberton*, the outcome of the remand was a gain realized by Plaintiff and thus can fairly be characterized as "some degree of success on the merits." Indeed, as explained above, this Court is of the opinion that the remand in this case suggested that Defendant's evaluation of Plaintiff's condition was gravely flawed, not simply inconclusive. Plaintiff's success is at least as substantial as that in *McKay* or *Bio-Medical Applications of Kentucky*, which more closely tracked the "remand order alone" scenario that Justice Thomas left open for future determination (which courts in this Circuit have now begun to undertake). Indeed, this is not a situation where there was a remand order alone, and it is clear that the fact of remand and resulting proceedings conferred some degree of success to Plaintiff on the merits of his claim.

In light of this analysis, Plaintiff has established that he is eligible for an award of attorney fees under *Hardt*.

## C. *Application of the* King *Factors*

Having determined that Plaintiff is eligible for an award of attorney fees under *Hardt*, the Court now addresses the *King* factors, which provide guidance on how judicial discretion should

be exercised with regard to attorney fees. This discussion is brief, as Plaintiff's eligibility for fees has already been established, and, pursuant to the facts and analysis in Part II.b, *supra*, it is fairly clear to the undersigned that a fee award is appropriate here. "These factors are not statutory and therefore not dispositive. Rather, they are simply considerations representing a flexible approach." *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2008).

Regarding the first factor, MetLife's culpability or bad faith, the Magistrate Judge and this Court have taken note of the fact that MetLife's determination of Plaintiff's claim for benefits was largely an inadequate paper review that lacked an in-person assessment of Plaintiff's condition as well as reasoning to support medical conclusions. Additionally, MetLife engaged in questionable tactics in coming to its decision, such as the use of a doctor's non-response as an affirmative statement, and the shifting of emphasis on what would seem to be crucial evidence regarding Plaintiff's condition (namely, the surveillance video). Although Defendant emphasizes that the Court did not explicitly find it "culpable," and instead merely deemed its benefits decision arbitrary and capricious (Doc. No. 44 at 11-12), both the Report and the Court's analysis of it here indicate that this first *King* factor falls in Plaintiff's favor.

As to the second *King* factor, MetLife's ability to satisfy a fee award, there can be no question that this major corporation can do so; indeed, Defendant does not make such an argument. Instead, it emphasizes that this factor is of little consequence to the analysis of a fee award under § 1132(e)(1) because, as Judge Echols (formerly of this District) noted, ability to pay is "weighed more for exclusionary than for inclusionary purposes." (Doc. No. 44 at 12 (quoting *Platt v. Walgreen Income Protection Plan for Store Managers*, No. 3:05-0162, 2006 U.S. Dist. LEXIS 90496, at *6 (M.D. Tenn. Dec. 14, 2006) (internal quotation omitted).) This Court agrees that in a case of this nature, the defendant's ability to pay is not particularly

important as opposed to the other factors, but it is noted that Defendant does not contest the assertion that it will be able to satisfy a fee award. The factor leans at least somewhat in Plaintiff's favor, *see McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 741, 743 (E.D. Tenn. 2008), *aff'd*, 2011 U.S. App. LEXIS 13143 (6th Cir. June 27, 2011), though perhaps it does not carry the greatest weight.

The third factor pertains to the deterrent effect a fee award might have. Plaintiff argues that "overcoming . . . the deferential arbitrary and capricious standard provides a general deterrence to other insurance companies because they will know that failure to provide a full and fair review could result in an award of attorney's fees." (Doc. No. 38 at 7-8 (citing *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d at 743).) Plaintiff thinks this is particularly so where there is evidence of bad faith or culpability. (Doc. No. 38 at 8.) In response, Defendant again emphasizes its opinion that no evidence of the latter exists, and points again to *Platt*, where Judge Echols found no evidence that defendant MetLife was culpable and ultimately denied the plaintiff's request for fees. (Doc. No. 44 at 13 (citing *Platt*, 2006 U.S. Dist. LEXIS 90496, at *6).) "[G]iven that Defendant did not necessarily act in bad faith," the deterrence factor did not fall in the plaintiff's favor. *Platt*, 2006 U.S. Dist. LEXIS 90496, at *6. Again, however, culpability on Defendant's part has been at least suggested in this case, apparently unlike in *Platt*. Further, this Court, like both the district and circuit courts that reviewed the claim for fees in *McKay*, is not of the view that culpability is necessary to serve the aim of deterrence—rather, an insurer such as MetLife might be deterred from performing unscrupulous reviews of LTD benefit claims in future by an award of fees. *See McKay*, 654 F. Supp. 2d at 743; *McKay*, 2011 U.S. App. LEXIS 13143, at *23. The third *King* factor, too, weighs in Plaintiff's favor.

The fourth consideration contained in *King* is whether the plaintiff sought to confer a common legal benefit on all participants or beneficiaries of an ERISA plan, or to resolve significant legal questions regarding ERISA. Plaintiff has conceded this point: he is an individual seeking benefits and did not intend to help others or address a particular legal question by bringing this action. (Doc. No. 38 at 8.) While Plaintiff argues that this factor falls in favor of neither party (*id.*), Defendant argues that the case raised routine issues and benefited Plaintiff alone, such that the fourth factor weighs in its favor and against a fee award (Doc. No. 44 at 14). The Court agrees that this factor must favor Defendant if it is to have any meaning, but, similar to the analysis of the second *King* factor, finds that it is of limited importance—this factor is surely meant to have greater weight when it is in favor of fees.

The final *King* factor, the relative merits of the parties' positions, is clearly to Plaintiff's favor in light of the previous *Hardt* analysis, in which the Court concluded that Plaintiff had achieved some success on the merits. Although this was not an unqualified win for Plaintiff, the merits of the case are in its favor, particularly in light of the reason that remand, and not judgment, was necessary—issues of fact were still unresolved after MetLife's review of the claim.

Ultimately, the Court finds that four out of the five *King* factors are in Plaintiff's favor, and that the fourth, which belongs to Defendant, carries only limited weight. Thus, not only is Plaintiff eligible for an award of attorney fees, but the Court also finds that he is entitled to and will be granted an award.

## D. Amount of Fees to Which Plaintiff Is Entitled

Plaintiff seeks a total of $69,750.00 in fees and expenses, representing the lodestar (hourly rate multiplied by the number of hours worked) plus expenses (the filing fee and service

of process fee). (Stranch Decl.[1] ¶¶ 5-7.) Plaintiff's fee request is supported by the memorandum of law cited repeatedly herein, and the Declaration of then-counsel Jane Stranch (now a Judge on the Sixth Circuit Court of Appeals), for whom attorney James Stranch, III, of her former law firm, has now been substituted (Doc. No. 50). An Exhibit, titled "Breakdown of Firm Time and Expenses," was included with Stranch's Declaration. (Doc. No. 39-1.) Further, Plaintiff submitted an Affidavit of Gareth S. Aden[2] and a Declaration of George Barrett[3], both of which documents contain statements of Nashville-area attorneys in support of the fee award requested.

Defendant has challenged the reasonableness of the fees requested based on the degree of Plaintiff's success, their allegedly excessive nature, and the lack of detail in Plaintiff's filings in support of the fees. (*See* Doc. No. 44 at 4-16; Doc. No. 48 at 2.) Overall, Defendant seeks a reduction in the total amount of fees sought "by at least 75%." (Doc. No. 44 at 11; Doc. No. 48 at 3.) Defendant has not contested the $365.00 in expenses that Plaintiff has requested.

i.     *Reasonableness of the Lodestar Figure*

In an action, such as this one, where Congress has authorized a fee award to a successful party, courts apply a lodestar approach in which "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate," *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Although the resulting fee "must be reasonable" and may be adjusted, "[t]here is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "The party seeking attorneys fees bears the burden of documenting his entitlement to the award," including hours worked and rates claimed. *Reed v.*

---

[1] Docketed at No. 39.
[2] Docketed at No. 40.
[3] Docketed at No. 41.

*Rhodes*, 179 F.3d 453, 472 (6th Cir.1999) (citing *Webb v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 242 (1985)). Adjustments to the amount claimed can be made with consideration of factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which were adopted by the Supreme Court in *Hensley*, 461 U.S. at 432, and include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 472 n.3.

In its Response, Defendant generally claimed that the fees requested were excessive, but did not specifically challenge the rates of pay charged by Plaintiff's attorneys, which were supported by the averments contained in counsel's Declaration, as well as the Aden Affidavit and Barrett Declaration[4]. Those rates were $350.00 per hour for attorney Stranch and $200.00 per hour for Denard Mickens, an associate with her firm, and the rates reflected what the attorneys charged to clients in cases of this sort in 2008 (although the parties continued to litigate

---

[4] In a filing contesting Plaintiff's request for leave to file a Reply, Defendant improperly set forth additional arguments that were not contained in its Response to the attorney fees motion and completely unrelated to Plaintiff's desire to file the Reply (including argument attacking the substance of Plaintiff's then-proposed Reply). (Doc. No. 46.) The Court strongly disapproves of this attempt to supplement the Response past the filing deadline and to submit argument that might properly belong in a Sur-Reply, all without the Court's leave and in disguise as opposition to Plaintiff's request for leave to Reply. The Court notes, nonetheless, that in this filing Defendant asserted that the Barrett Declaration was insufficient to support the rates and hours of Plaintiff's attorneys. (Doc. No. 46 at 4-5.) Particularly, Defendant claimed that the Barrett Declaration was insufficient because it did not indicate that Mr. Barrett had reviewed Plaintiff's counsel's invoices or the specific time entries she submitted. (*Id.*) The Court sees an adequate foundation for Mr. Barrett's assessment of the rates sought, and notes that Mr. Barrett did opine on the total number of hours requested by each attorney in light of the nature and complexity of this specific case, as well as pleadings and other documents filed in the case. (Barrett Decl. ¶¶ 6, 9-10.) Although the Barrett Declaration is perhaps not as complete as it could be, the Court does not find it baseless as Defendant suggests, if Defendant's concerns are to be considered at all in light of the circumstances of this challenge. Further, Defendant has not in any way contested the adequacy of the Aden Affidavit, which serves the same purpose as (and is consistent with) the Barrett Declaration.

15

in this court through 2010). (Stranch Decl. ¶ 4.) Because these rates are supported by counsel's own claims and competently verified by two members of the Nashville legal community who find them to be reasonable in light of the case's nature and the experience of Plaintiffs' attorneys (Aden Aff. ¶¶ 9-10; Barrett Decl. ¶¶ 5-6, 11-12), the Court considers them to be reasonable.

What Defendant does challenge is the number of hours Plaintiffs attorneys have submitted, claiming that these are unreasonable and excessive, and that improper "block billing" has occurred. (Doc. No. 44 at 4-6.) Defendant did not cite any authority for the proposition that "block billing"—the use of general time entries for multiple tasks—is improper. Indeed, the Sixth Circuit has scarcely commented on this practice, and where it has, the court has expressed some indifference. *See Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs*, 473 F.3d 253, 273 (6th Cir. 2007). However, the Sixth Circuit has recognized that the documentation in support of an award of attorney fees must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.* 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). If the documentation is inadequate, a court may reduce the award accordingly. *Id.* at 553 (citing *Hensley*, 461 U.S. at 433). However, the Sixth Circuit has stated that entries may be sufficient "even if the description for each entry is [not] explicitly detailed." *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 149 (6th Cir. 2010) (quoting *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005). Although each entry does not have to be detailed, "the general subject matter should be identified." *Hensley*, 461 U.S. at 437.

As stated above, Plaintiff requests $69,385.00 in fees for 272.45 hours of work by two attorneys. Plaintiff divides the number of hours spent by each of his two attorneys into five entries: "Investigation, factual research and Complaint"; "Post Complaint investigation and work regarding Answer and Administrative Record"; "Benefit calculations and settlement efforts"; "Legal research and motion practice"; and "Court appearance and case management." (Doc. No. 39-1.) Defendant asserts these entries are too broad and make it impossible to determine how Plaintiff's counsel's time was spent. (Doc. No. 44 at 4-5.) Defendant also states that the number of hours Plaintiff's counsel is claiming is almost 100 hours more than MetLife's own counsel spent on this matter. (*Id.* at 5.)

These entries are not sufficient for the Court to determine with a high degree of certainty the reasonableness and accuracy of the hours billed, though a review of Plaintiff's Memorandum supporting his Motion and the Stranch Declaration fills in some of the holes left by entries such as "Benefit calculations and settlement efforts" (*compare* Doc. No. 39-1 *with* Doc. No. 38 at 11). The entries are examples of both block billing and vagueness that hinder Plaintiff's opponent and this Court from performing a review of the fee request. Although there is nothing suspicious or concerning about the total number of hours Plaintiffs' attorneys spent on this case—particularly in light of its legal and factual complexity, as well as the support for amounts billed in the Aden Affidavit and the Barrett Declaration—the descriptions provided are vague and fairly generic. The Court has no basis for assessing certain factors, such as whether any of the work the two attorneys performed was redundant (as the entries for each attorney are the same but for the hours spent by each).

At the same time, the Court has not been given a good reason to doubt these figures. The fact that Defendant's own attorneys spent less time on this case is not particularly compelling, as

this could be due to any number of factors (for example, that MetLife and its attorneys have likely defended cases much like this one repeatedly), and, of course, they were also unsuccessful in this litigation. The fact that Defendant's counsel cannot account for the 15.1 Plaintiff's attorneys spent on "Court appearance and case management" in a case that involved one case management conference does not mean that these hours were not spent in reasonable pursuits to this effect.

Thus, while the Court will not reduce the fees requested by seventy-five percent as Defendant desires, a reduction is necessary to account for the fact that the undersigned is not able to ensure with a high degree of certainty that the hours allegedly expended were in fact expended in a reasonable, non-duplicative fashion. "The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is 'across-the-board fee reductions.'" *Helfman v. GE Group Life Assurance Co.*, Case Number 06-13528, 2011 U.S. Dist. LEXIS 41608, at *20 (E.D. Mich. April 18, 2011) (quoting *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 n.5 (N.D. Ohio 1997)). In *Helfman* itself, the district court granted a reduction of twenty percent across the board "in light of [the plaintiff's] burden of production and in light of the 'block billing' and vague entries included in the billing records." *Id.* at 21. The Court was troubled by entries similar to those in this case, such as "Internet and westlaw research" and "Telephone conference with client." *Id.* at 20. In another recent case, a district court in this Circuit reduced a fee amount by ten percent overall in light of concerns about redundancies in work performed by multiple attorneys and "brief descriptions of the work performed for each time entry." *E.E.O.C. v. Cintas Corp*, Case Nos. 04-40132;06-12311, 2011 U.S. Dist. LEXIS 86228, at *22-*23 (E.D. Mich. Aug. 4, 2011). The court in *Cintas* relied on *Gratz v. Bollinger*, 353 F. Supp. 2d

929 (E.D. Mich. 2005), where the court had determined that a ten percent across-the-board reduction was appropriate due to vagueness, reflected in entries like "office conference" on several occasions, and instances of block billing that lumped three or four tasks into one time entry, *id.* at *24-*25. Although there are numerous other cases within the Circuit addressing this issue, the court also finds helpful Judge Trauger's recent opinion in this District reducing a fee amount by twenty-five percent overall "[t]o account for any excessiveness, duplication, redundancy, and block billing." *Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.,* Case No. 3:09-9545, 2010 U.S. Dist. LEXIS 108769, at *7-*9 (M.D. Tenn. Oct. 12, 2010). It should be noted, though, that the attorneys' records in the latter case contained evidence of duplication and excessiveness, while here there is simply not enough information to dispel concerns that such problems might have occurred.

Having reviewed the records in this case, as well as relevant decisions within this circuit, this Court finds that an across-the-board reduction of twenty percent is appropriate.

### ii.     Reduction of Fees Due to Plaintiff's "Limited Success"

Defendant asserts that Plaintiff should not be awarded *any* of the fees that he seeks because he was unsuccessful in receiving a judgment in his favor from this Court, and instead only a remand. (Doc. No. 44 at 9-11.) Further, he argues that if any fees are granted, that they should at least be reduced due to the Court's adoption of the Magistrate Judge's recommendation that materials Plaintiff filed to supplement the administrative record should be stricken. (*Id.* at 6, 11.) Because Plaintiff's effort to expand the administrative record was unsuccessful, Defendant argues that to award fees for this work would be an abuse of discretion. (*Id.* at 11.)

The Sixth Circuit has held that "'[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Isabel v. City of Memphis,*

404 F.3d 404, 416 (6th Cir. 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Further, "[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee; if a plaintiff obtains limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Isabel*, 404 F.3d at 416. However, the Sixth Circuit has said that "a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised." *Cummings Inc. v. BP Prods. N. Am.*, Case Nos. 3:06-0890 & 3:0700834, 2010 U.S. Dist. LEXIS 19037, at *28 (M.D. Tenn. Mar. 3, 2010) (quoting *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir. 1996)). Furthermore, "a reduction in attorney fees is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel*, 404 F.3d at 416 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349-50 (6th Cir. 2000)).

First, the Court addresses Defendant's argument that because Plaintiff achieved a remand, rather than a reversal, before this Court, he should receive no fees at all. Although this Court did not grant Plaintiff's request for reinstatement of LTD benefits, it did find that MetLife's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious, and cited several flaws and questionable practices that rendered MetLife's review inadequate. The claim was remanded back to MetLife for reconsideration, and reinstatement of benefits retroactive to the date of termination resulted. Although the decision to reinstate LTD benefits did not come directly from this Court, it was a result of the Court's decision to remand the claim back to MetLife.

If the Court had awarded benefits to Plaintiff based on the administrative record, this clearly could not be called "limited success." However, the Magistrate Judge declined to recommend a judgment for Plaintiff based on the administrative record because there were still

factual issues to be resolved. (Doc. No. 29 at 16.) There were factual issues left unresolved, at least in part, because MetLife failed to adequately consider and analyze Plaintiff's medical record during its initial review. It would seem absurd to classify the a decision to remand the case back to Defendant for further review as "limited success" in this situation: this would allow Defendant to benefit from a reduction in attorney fees when it was Defendant's failure to consider and adequately analyze the Plaintiff's medical record that made judgment in Plaintiff's favor impossible. It cannot be that an inadequate review that produces an insufficient basis for a benefits decision by the insurer or the court can result in a fee reduction due to the plaintiff's limited success in court. Nor would "limited success" properly characterize what ultimately came of this case: proceedings in accordance with the remand ordered by this Court resulted in a full victory for Plaintiff.

Defendant's argument regarding a reduction due to Plaintiff's billing for hours spent seeking to expand the administrative record has more merit. Defendant argues that all the time Plaintiff spent trying to expand the administrative record—"including but not limited to, time spent drafting and gathering information relative to the affidavits that were struck by this court"—should be eliminated from the fee request. (Doc. No. 44 at 6.) Indeed, in the Report recommending remand adopted by this Court, Magistrate Judge Brown also recommended striking three affidavits Plaintiff submitted regarding evidence outside the administrative record. (Doc. No. 29 at 15-16.) The Magistrate Judge found the inclusion of these affidavits in the record was not permissible, and also that they were not timely filed. (*Id.*) In Plaintiff's Reply, he argues not that these filings played some important role in the case before this Court, but that they were an important part of the record considered on remand, and that investigation leading up to the affidavits in question was necessary to the investigation of the case. (Doc. No. 45-1 at

6 n.2.)  In response, quotes a Sixth Circuit case, *Anderson v. Procter & Gamble Co.*, 220 F.3d 449 (6th Cir. 2000), which states that "Section 502 of ERISA does not permit parties to recover attorneys' fees for legal work performed during the administrative phase of a benefits proceeding," *id.* at 456.  (Doc. No. 46 at 5.)  Defendant also asserts that the Sixth Circuit has held that it would be "an abuse of discretion for the district court to award attorneys' fees to a losing party."  (*Id.* (quoting *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 427 (6th Cir. 1992)).)

Defendant takes *Anderson* out of context (the court had stated only a paragraph earlier that it was addressing the administrative *exhaustion* phase of a benefits proceeding), and the section of *Cattin* cited reflects not the body of the opinion but instead a parenthetical quotation of a Seventh Circuit case, *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829 (7th Cir. 1987). Were the principles Defendant cites not common sense in this context, the Court would be troubled by these misleading references to authority—Defendant places no qualifiers on its citations, and the Court would be unaware that there should be had it not investigated further. Still, the Court must agree that Plaintiff's efforts were not timely or appropriate, as the affidavits submitted could not be used to supplement the administrative record in this forum, and their only use (by Plaintiff's admission) has been in subsequent proceedings.  As such, they cannot be part of a reasonable fee award in this case.

The block billing of "Post Complaint investigation and work regarding Answer and Administrative Record" makes it difficult for the Court to ascertain precisely what work the accompanying hours (8 for attorney Stranch and 7.4 for attorney Mickens) reflect.  However, the Court will not allow Plaintiff to benefit from his own error in submitting vague billing records. It seems reasonably certain that this entry is where any efforts to investigate and expand the administrative record occurred—a separate, more significant entry includes investigation that did

not occur after the Complaint (presumably before), and no other entry references the administrative record. These hours (8 at $350.00 per hour and 7.4 at $200.00 per hour) will be reduced from the lodestar before the Court performs the overall reduction of twenty percent.

### iii. Final Fee and Expense Calculation

First, the Court reduces the requested award by the number of hours Plaintiff improperly billed to supplement the administrative record. Thus, attorney Stranch's total hours billed will be reduced by 8, from 99.3 to 91.3, and attorney Mickens' total hours billed will be reduced by 7.4, from 173.15 to 165.75. When these new amounts are multiplied by the reasonable rates established above, they come to $31,955.00 and $33,150.00, for a total of $65,105.00. With a twenty percent overall reduction of the fee amount, the fee award comes to $52,084.00. Once the uncontested expenses, which total to $365.00, are added, the final amount of fees and expenses is $52,449.00.

## IV. CONCLUSION

As set forth above, the Court **GRANTS** Plaintiff's Motion and **AWARDS** him attorney fees and expenses in the amount of $52,449.00.

It is so ORDERED.

Entered this the ___6th___ day of ~~August~~ September, 2011.

_JOHN T. NIXON, SENIOR JUDGE_
_UNITED STATES DISTRICT COURT_